UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY AMERLING,

        Plaintiff,                          Civil Action No. 06-11653

v.                                           HON.  NANCY G. EDMUNDS,
                                              U.S. District Judge
                                              Hon. R.  STEVEN WHALEN,
                                              U. S. Magistrate Judge

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Gary Amerling brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment DENIED.

## **PROCEDURAL HISTORY**[1]

Plaintiff filed an application for DIB, alleging disability as of March 25, 2002 (Tr. 48-50). After denial of his claim on July 10, 2002, Plaintiff filed a timely request for an administrative hearing, conducted on April 12, 2004 in Flint, Michigan before Administrative Law Judge ("ALJ") Douglas N. Jones (Tr. 353). Plaintiff, represented by attorney Mikel Lupisella, testified. (Tr. 355-358). Stephanie Leech, a vocational expert ("VE") also testified (Tr. 369-375). On August 24, 2004, ALJ Jones found that Plaintiff was not disabled because although unable to perform his past relevant work, he could perform a range of unskilled work at the light exertional level existing in significant numbers in the national economy (Tr. 25).

## **BACKGROUND FACTS**

Plaintiff, born March 18, 1949, was age fifty-five when the ALJ issued his decision (Tr. 26, 48). He completed high school and one year of college (Tr. 71). Plaintiff, formerly an assembler and fork-lift operator, alleges disability for the period in question as a result of vestibular dysfunction and hypertension (Tr. 65, 66, 94).

---

[1] Plaintiff made two previous applications for benefits (Tr. 19). The doctrine of *res judicata* bars the ALJ from finding the existence of disability through the more recent denial on June 23, 1994 (Tr. 19). The period now in question ranges from June 24, 1994 through June 30, 1998, "the date Plaintiff was last insured for DIB" (Tr. 19). This report will discuss medical records created before or after the closed period only to the extent needed to establish some context for Plaintiff's condition during the four years in question. For example, transcript pages 237 to 346 refer exclusively to medical treatment postdating 1998 by several years. Although this Court has thoroughly reviewed the later documents, they are discussed only nominally in this report.

**A. Plaintiff's Testimony**

Plaintiff, a longtime Flint, Michigan resident, testified that he lived in a single family dwelling with his father and brother (Tr. 356). Plaintiff, 55, reported that he completed high school and one year of college (Tr. 357). He indicated that he had last performed full-time work in April, 1990, adding that in 1996 and 1997 he held a part-time job as a stock clerk on a seasonal basis (Tr. 358). He also admitted working for short stints as an errand runner and as a life guard for five months in 2002 (Tr. 359-260).

Plaintiff testified that he receives funds regularly from investments and extended disability benefits from General Motors, adding that since he lived with his father he did not make rent or mortgage payments (Tr. 362). He stated that he did not pursue vocational training after leaving General Motors (Tr. 363).

In response to questioning by his attorney, Plaintiff stated that between 1994 and 1998, the medication he took created constant drowsiness requiring him to nap multiple times each day[2] (Tr. 365). In addition, he reported that during the same time frame, poor concentration prevented him from sitting for extended periods (Tr. 365). He alleged that he could stand in one place for a maximum of 30 minutes and walk for a maximum of three city blocks before experiencing balance problems (Tr. 365). Estimating that he could lift 20 to 25 pounds at most, he added that his discomfort was alleviated by lying down (Tr. 366).

---

[2]As discussed more fully below, Plaintiff was last insured for DIB June 30, 1998 (Tr. 19). Therefore, to qualify for disability insurance benefits, he must establish that his disability occurred on or before that date.

Plaintiff stated that he experienced pain when bending or squatting and could reach overhead on only a limited basis (Tr. 366).

Plaintiff testified that between 1994 and 1998, he experienced vertigo or dizziness frequently, adding that an attack of dizziness could last anywhere between half an hour and two hours (Tr. 366). He stated that his condition, which he alleged prevented him from making social or occupational plans, occurred three to four times a week (Tr. 366-367). He indicated that he continued to experience vertigo at present which required him to take an increased dosage of his prescribed medications (Tr. 367). Plaintiff stated further that he had been taking antidepressant medication since prior to June, 1998 and had received one year of medical health counseling (Tr. 368). Plaintiff reported that in addition to balance problems, he had experienced conditions related to gastro-reflux and hiatus hernias which required him to eat slowly and occasionally lie down after eating (Tr. 368).

### B. Medical Evidence

#### i. Treating Sources

Notes from a October, 1989 balance function evaluation performed at the University of Michigan's Vestibular Testing Center indicate that Plaintiff experienced "possible peripheral vestibular system involvement," but "[n]o indications of central vestibulo-ocular pathway involvement noted" (Tr. 124). Plaintiff reported "gradual increasing loss of hearing bilaterally with occasional fluctuations of hearing bilaterally" (Tr. 125). Neil T. Shepard, Ph.D., recommended balance habituation therapy for "motion-provoked spells of dysequilibrium," finding further that he did not anticipate a significant impact on Plaintiff's

"spontaneously-occurring events of vertigo reported to take place several times in a 3-month span" (Tr. 124). In December, 1989, Kirk A. Frey, M.D,. expressed puzzlement that although Plaintiff alleged loss of awareness up to as often as once a week, "none had been witnessed" (Tr. 102). In May, 1990, Henry A. Buchtel, Ph.D.,, noted that Plaintiff had recently received low-average IQ scores and results of psychological testing which suggested that Plaintiff's condition could be attributed in part to his mental condition (Tr. 98-99). Buchtel recommended that Plaintiff consider "retraining opportunities" rather than going back to school (Tr. 99). In July, 1990, Dr. Frey noted that Plaintiff's neurological tests had yielded normal results (Tr. 95). In December, 1991, Dr. Shepard noted that Plaintiff had made significant progress in therapy for motion sensitivity in 1989 and 1990 (Tr. 118). January through April, 1992 physical therapy records state that in regard to balance, Plaintiff felt well enough to run three miles at a time, observing that Plaintiff "has been able to participate in some rather high level tasks such as jogging since being off work, which is somewhat inconsistent with his functional findings and his described level of motion provoked vertigo" (Tr. 113-115).

In October, 1996, a clinical examination performed in response to equilibrium complaints yielded "unremarkable" results (Tr. 185). In October, 1997, Plaintiff returned to the University of Michigan complaining of two to three episodes of vertigo per day up to two hours, adding that although he had not experienced spells for a "period," they had returned three months earlier (Tr. 106). In October, 1997, Paul B. Brechelsbauer stated that "[a]udiometry reveals borderline mild sensorineural hearing loss in both ears with 92%

speech discrimination on the right and 96% on the left" (Tr. 171).  May, 2001 treating notes by Jitendra P. Katneni, M.D., allude to Plaintiff's complaints of "persistent vertigo" (Tr. 231).  In October, 2001, Katneni noted that Plaintiff "said he is feeling much better, dizzy spells are not there anymore" (Tr. 230).

### ii. Consultive/Non-examining Sources

In July, 2002, a state examiner performed a Residual Functional Capacity Assessment based on the records of Plaintiff's treating sources (Tr. 208-215).   The report found that Plaintiff retained the ability to lift 50 pounds occasionally and 25 frequently; an ability to stand, sit, or walk for six hours in an eight-hour workday; and an unlimited ability to push or pull (Tr. 209).  In addition, the report deemed Plaintiff able to climb ramps and stairs frequently, but due to recurrent dizziness was precluded from ladder, rope, or scaffold climbing (Tr. 210).  Plaintiff's remaining postural limitations consisted of no more than occasional balancing, stooping, kneeling, crouching, and crawling (Tr. 210).   Plaintiff's assessment, noting the lack of all manipulative, visual, or communicative limitations, found that he should avoid concentrated exposure to extreme cold or heat, vibrations, or machinery, and that he should avoid all exposure to heights (Tr. 211-212).

### C.  Vocational Expert Testimony

VE Stephanie Leech, stating that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), classified Plaintiff's former work as an assembler as unskilled at the medium exertional level, and his work as a fork-lift operator as semi-skilled and exertionally light (Tr. 94, 369).

>ALJ Jones posed the following hypothetical question to the VE:
>
>"If I were to assume a person who was 49 years old and in the year 1998 and I'd like to focus to the extent that we can do so on the year 1998 who was able to perform medium work that involved the need to stand or walk on a level surface and only occasional bending and only occasional kneeling or bending at the knees, no crawling, occasional climbing stair, no climbing ladders, and no operation of motor vehicles in the context of the work and no exposure to unprotected heights or intrinsically hazardous uncovered moving machinery and only occasional overhead reaching. No use of vibrating tools and only occasional exposure to very hot or very cold temperatures and no exposure to very loud noises or to environments where there would be constant background noise and also a need to, on a frequent or greater basis to interpret oral communications. In other words, if the job didn't involve oral communications the need to understand oral instructions then the background noise wouldn't be a problem but if such a person be able to perform the claimant's past, either of the claimant's past jobs, as he actually performed them or as they generally exist in the national economy?"

(Tr. 370). After obtaining additional information from Plaintiff, the VE testified that such limitations would preclude Plaintiff's work as an assembler or fork-lift operator, either as experienced by Plaintiff or as a generally performed in the national economy (Tr. 370-372). However, the VE found that given the limitations set out above, Plaintiff could perform 12,000 assembly positions, 2,000 inspector positions, 1,200 sorter positions, and 10,000 repairer jobs (Tr. 373). The VE stated further that if the above job findings were limited to positions allowing a sit/stand option, the assembly jobs would be reduced to 6,000, the inspector to 7,000, and the repairer to 1,000 (Tr. 373). The VE then stated that if the original hypothetical limitations were supplemented to include only sedentary work, the assembly positions would be reduced to 8,000 jobs, the inspector to 5,000, the packer position to 3,000

and sorter, 2,000 (Tr. 374).[3]  The VE found that if the hypothetical individual were obliged to lie down two to three times a week at unscheduled times for a two-hour period all competitive work would be precluded (Tr. 374).

**D. The ALJ's Decision**

ALJ Jones concluded that medical evidence documented the severe impairments of "chronic disequilibrium syndrome due to labyrinthitis (probable Meniere's disease); hypertension; a hiatal hernia and esophagitis and status post cholecystectomy (1992); and a personality disorder, NOS," observing that documentation of a shoulder impairment post-dated June, 1998 (Tr. 21). However, the ALJ found that none of the impairments met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 21-22).

The ALJ found that Plaintiff retained the RFC to perform light work involving

---

[3]The ALJ stated clearly that the restriction to sedentary work should be considered *in addition* to the reduction created by the sit/stand option (Tr. 374). However, the VE apparently set aside the sit/stand restriction when calculating the effects of the sedentary limitation (Tr. 374). For example, the sit/stand requirement reduced the assembly jobs to 6,000, but when queried about the *additional* limitation of sedentary work, she stated that 8,000 assembler jobs existed (Tr. 374). Obviously, if she had calculated the sit/stand option in addition to the sedentary requirement, she would have found the number assembler jobs fewer than when figuring in the sit/stand option alone. However at the very least, assuming that assembler limitations of "sit/stand" and sedentary are mutually exclusive, 2,000 assembler jobs still exist in the regional economy, aside from the inspector and repairer positions (similarly reduced) which easily constitute a significant number. The VE's testimony is further muddled by the fact that in the third set of job numbers, progressively reduced by additional limitations, the job "packer" is included for the first time in the testimony (Tr. 374).

> "walking only on level surfaces, only occasional bending at the waist or knees, occasional kneeling, occasional climbing stairs, no crawling, no climbing ladders, no exposure to unprotected heights, hazardous machinery, no exposure to very hot or very cold temperatures, and no exposure to very loud noises"

(Tr. 25). Adopting the VE's job findings, the ALJ determined that although Plaintiff was unable to perform any of his past relevant work before July 1, 1998, he could perform a significant number of unskilled jobs in the national economy at the light level of exertion, including work as an assembler, inspector, and repairer (Tr. 25).

ALJ Jones found Plaintiff's allegations that he could perform no sustained work for the period in question as a result of episodic dizziness "not fully credible, " citing the lack of aggressive treatment along with "minimal medical treatment provided between June 24, 1994 and June 30, 1998" (Tr. 23). The ALJ also noted that Plaintiff "routinely performed daily activities that include[d] performing minor household chores, cooking simple meals and socializing with family and friends" (Tr. 23).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Listing 2.07B

Plaintiff raises the single issue that the ALJ erred in finding he was not disabled at Step Three of the administrative analysis. Plaintiff relies on a July, 2002 conclusion by the state examiner that due to labyrinthine-vestibular disturbances, he meets part A of 20 C.F.R. Part 404, App. 1, Listing 2.07 (Tr. 207) arguing further that evidence found elsewhere in the record supports a finding that he also meets the second portion of 2.07's test which requires him to demonstrate hearing loss.

> Listing 2.07 reads as follows:
>
> Disturbance of labyrinthine-vestibular function (including Meniere's disease), characterized by (1) a history of frequent attacks of balance disturbance (vertigo), (2) tinnitus (ringing in the ears), and (3) progressive loss of hearing, with both
> (A) disturbed function of vestibular labyrinth (inner ear components) demonstrated by caloric or other vestibular tests, and
> (B) hearing loss established by an audiometry.

Plaintiff's argument fails for several reasons. First, taken as a whole, the state examiner's conclusion on which he relies clearly supports a non-disability finding, stating that Plaintiff "[d]oes not meet 2.07B (hearing loss) although does meet 2.07A. Not an allowance for 2.07" (Tr. 207). Further, the examiner's handwritten comments support his ultimate finding. He notes that an October 30, 1997 hearing test revealed only "mild borderline" hearing loss in both ears (Tr. 210 referencing Tr. 171) again stating two pages later that Plaintiff's hearing loss was only "mild" (Tr. 212).

Second, I disagree with Plaintiff's argument that pursuant to SSR 98-8, the ALJ did not address the conflict between the state examiner's opinion and other evidence.  Although an ALJ must state his reasons for rejecting a *treating* physician's opinion, the requirement does not extend to consultive or non-examining physician's findings. *See Smith v. Commissioner of Social Sec.,* --- F.3d —,  2007 WL 1040037, *2  (6th Cir. April 9, 2007)("the procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when [treating] physicians are telling them that they are.")

Moreover, the administrative decision provided sufficiently thorough reasons for its non-disability finding at Step Three, noting that Plaintiff's medical records show that during the period between June 24, 1994 and June 30, 1998, Plaintiff sought treatment for the vertigo and/or related problems for the span of less than one month, therefore failing to demonstrate that he endured his condition for the 12-month durational requirement needed to establish disability.

Further, the ALJ was not required to adopt the consultive physician's opinion that Plaintiff met the "A" section of Listing 2.07, then cull the remainder of the record for evidence that Plaintiff met 2.07B's requirements.  As noted by Defendant, ample record evidence supports the finding that Plaintiff did not meet 2.07B's requirements.  Even assuming that Plaintiff could demonstrate overwhelming evidentiary support that he met 2.07B's requirements, his argument is fatally undermined by the fact that the ALJ, as noted above, made a permissible and well discussed determination that Plaintiff did not even meet

the requirements of Listing 2.07A (Tr. 28).

This Court notes in closing that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments. However, the overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. Based on a review of this record as a whole, it is evident that the ALJ's decision, well supported by scant record evidence suggesting disability during the closed period, is within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                           S/R.  Steven Whalen
                                           R.  STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

Dated:  April 30, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 30, 2007.

                                           S/Gina Wilson
                                           Judicial Assistant